James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
19712 MacArthur Blvd., Suite 222
Irvine, California 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (phv forthcoming)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE EQUITIES CORPORATION,<br><br>Defendant. | Case No.: 2:25-cv-03154<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Kimberly Hudson ("Plaintiff" or "Hudson"), individually, and on behalf of all others similarly situated, through her undersigned counsel, and for her Class Action Complaint against Defendant, Nationwide Equities Corporation ("Defendant" or "Nationwide Equities"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. Plaintiff brings this case to protect her privacy rights; namely, the right to be left alone from unwanted telemarketing phone calls.

2. Plaintiff brings this suit to stop companies like Defendant from placing phone calls to her and the putative class members' phones despite the fact Plaintiff and the putative class members registered their phone numbers on the National Do-Not-Call Registry ("DNC List").

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA affords special protections for people who request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. 47 U.S.C. § 227(c)(5).

5. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Hudson, frequently face. For example, in 2024 alone, approximately 52.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time

(last visited January 15, 2025).

6.    Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7.    In fact, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls.  Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

8.    The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

10.    This Court has personal jurisdiction over Defendant because it transacts business in California, directly markets its products and services in California, and sells various products and services in California, and for the reasons otherwise set forth in this Complaint.

11.    Defendant has continuous and systematic contacts with the State of

California.

12.    Hudson was (and is) a resident and citizen of Los Angeles, California at all times relevant to this Complaint.

13.    Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

14.    The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## **PARTIES**

15.    At all times relevant to this Complaint, Hudson was, and is still, the owner of a phone, with a phone number of 323-XXX-1729.

16.    Hudson's phone number was registered on the DNC List on September 1, 2003, for the purpose of being left alone by telemarketers.

17.    The monthly bill associated with Hudson's phone number is issued in her name, and not in the name of a business.

18.    Hudson uses her phone primarily for personal purposes, such as communicating with friends and family members.

19.    Defendant Nationwide Equities Corporation is a New York corporation within its principal place of business in New Jersey.  Defendant is registered with the California Secretary of State as a foreign corporation, and at all times relevant to this Complaint has been authorized to transact business in California and throughout the United States.

20.    Defendant's business registration with the California Secretary of States that Defendant's "Type of Business" is "Mortgage Banking."

21.    Defendant's website is www.nwecorp.com.

22.    Defendant offers a variety of mortgage and mortgage-related products.

23.    One of the mortgage-related products identified on Defendant's website are reverse mortgages and reverse loan refinancing.

24.    Defendant's website includes a page titled "Where We Lend."    The "Where We Lend" page identifies California as a state in which it provides its mortgage and mortgage-related products.

25.    Defendant's website also includes a page titled "California Reverse Mortgages." This page states, "Put Your Home to Work with a Reverse Mortgage." This page also identifies multiple "Reverse Mortgage Loan Options" that Defendant offers.

26.    Defendant markets its mortgage and mortgage-related products, in part, through placing telemarketing phone calls.

27.    Hudson and the putative class members did not provide "prior express written consent" (as that term is defined in 47 C.F.R. §64.1200(f)(9)) or any form of consent to be contacted on their phones by Defendant or anyone acting on its behalf.

## DEFENDANT'S CALLS TO PLAINTIFF

28.    On March 21, 2024, Defendant placed a call to Plaintiff's phone, and left a voicemail on Hudson's phone. The caller identified himself as being a representative of Defendant, and that he was calling regarding important information regarding a reverse mortgage that was taken out in 2018. The caller also left a call back number of 443-725-9925.

29.    On March 27, 2024, Defendant placed a call to Plaintiff's phone, and left a voicemail on Hudson's phone. The caller identified himself as being a representative of Defendant, and that he was calling regarding important information regarding a reverse mortgage that was taken out in 2018. The caller also left a call back number of 443-725-9925.

30.    On April 15, 2024, Defendant placed a call to Plaintiff's phone, and left a voicemail on Hudson's phone. The caller identified himself as being a representative of Defendant, and that he was calling about a reverse mortgage. The caller also left a call back number of 443-725-9925.

31.    On May 2, 2024, Defendant placed three calls to Plaintiff's phone, all of

1 which appeared on Hudson's phone as originating from phone number 443-725-9925.

2       32.    Hudson seeks recovery individually, and on behalf of the putative class

3 members, for the calls placed to Hudson and the putative class members despite their

4 phone numbers being registered on the DNC List.

5 **DIRECT AND VICARIOUS LIABILITY**

6       33.    Without the benefit of discovery, and because Defendant disclosed its

7 identity in the calls at issue, Hudson assumes Defendant directly placed the calls at

8 issue.

9       34.    However, if some or all the calls were placed by third-party/parties on

10 behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

11       35.    On May 9, 2013, the FCC determined that telemarketers like Defendant

12 could not avoid liability by outsourcing telemarketing:

13         [A]llowing the seller to avoid potential liability by

14         outsourcing its telemarketing activities to unsupervised third
parties would leave consumers in many cases without an

15         effective remedy for telemarketing intrusions. This would
particularly be so if the telemarketers were judgment proof,

16         unidentifiable, or located outside of the United States, as is
often the case. Even where third-party telemarketers are

17         identifiable, solvent, and amenable to judgment limiting

18         liability to the telemarketer that physically places the call
would make enforcement in many cases substantially more

19         expensive and less efficient, since consumers (or law

20         enforcement agencies) would be required to sue each
marketer separately in order to obtain relief. As the FTC

21         noted, because "[s]ellers may have thousands of

22         "independent" marketers, suing one or a few of them is
unlikely to make a substantive difference for consumer

23         privacy.

24

25 *In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal

26 citations omitted).

27       36.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA

28 liability, including the assertion that a seller's liability requires a finding of formal

actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

37.    The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

38.    If Defendant directly placed the calls at issue to Hudson and the putative class members, Defendant is directly liable for the placing of those calls.

39.    However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

40.    If Defendant did not directly place the calls at issue to Hudson and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

41.    Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

42.    Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

43.    Defendant acted as principals to telemarketing agent(s) who were acting on their behalf.

44.    Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their captive agents' TCPA violations.

45.    For the count identified below, if Defendant directly placed the calls at issue to Hudson and the putative class members, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## **CLASS ALLEGATIONS**

46.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3),

Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

47.     Hudson seeks to represent the following class (the "Class"):

For the four-year period prior to the filing of this lawsuit to the date of class certification, all persons:

(1) who received two or more calls during a 12-month period in connection with the marketing of Defendant's services;

(2) whose number was registered on the Do Not Call Registry for more than 30 days at the time the calls were received; and,

(3) whose number is registered to an individual and not a business.

48.     Hudson reserves the right to add administrative subclasses or add classes, and/or to amend the definition of the proposed Class, as this lawsuit proceeds.

49.     The members of the proposed Class are so numerous that joinder of all members is impracticable. Hudson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed Class are readily identifiable through records available to Defendant or those acting on their behalf.

50.     Most members of the proposed Class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

51.     On information and belief, Defendant has called, and likely continues to call, people whose numbers are on the DNC List. It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

52.     Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed Class include, but are not limited to:

a.     Whether Defendant's conduct of placing calls to placing phone numbers

on the DNC List Defendant violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

      b.     Whether the calls were "solicitations," as defined by the TCPA;

      c.     Whether Defendant maintained and effectively implemented sufficient protocols to prevent the placing of calls to persons whose phone numbers are on the DNC List;

      d.     Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

      e.     Whether Hudson and the putative Class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

53.    Hudson's claims are typical of the claims of the proposed Class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed Class and are based on the same legal theories.

54.    Hudson and her counsel will fairly and adequately protect the interests of the members of the proposed Class. Hudson's interests do not conflict with the interests of the proposed Class she seeks to represent, and she has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

55.    Hudson's counsel will vigorously litigate this case as a class action.

56.    A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed Class in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed Class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed Class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

57.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

58.    Questions of law and fact, particularly the propriety of Defendant placing calls to phone numbers on the DNC List, predominate over questions affecting only individual members.

59.    Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the putative class members.

## COUNT I
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)

60.    Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

61.    The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

62.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

63.    By placing calls to Hudson's and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

64.    In addition, the TCPA allows the Court to enjoin Defendant from placing phone calls to phone numbers that are registered on the DNC List. *See* 47 U.S.C. §§

227(c)(5)(A).

65.     Defendant knew or had reason to know that Hudson's and the putative class members' phone numbers were on the DNC List, but called them anyway.

66.     Defendant willfully violated the TCPA by placing calls to Hudson and the putative class members despite knowing or having reason to know they did not have consent to call them and knowing their numbers were registered on the DNC List.

67.     Hudson and the putative class members are entitled to damages of $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests that the Court:

a.      Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Class representative, and appointing her counsel as class counsel;

b.      Enter judgment in favor of Plaintiff and the Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.      Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.      Enter judgment in favor of Plaintiff and the Class for all applicable pre-judgment and post-judgment interest amounts;

e.      Enter judgment in favor of Plaintiff and the Class for all costs, including the cost of class notice; and

f.      Award Plaintiff and the Class members such further and other relief the Court deems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Please take notice that Plaintiff Kimberly Hudson demands a jury trial.

Dated: April 10, 2025                    Respectfully submitted,

MILLER SHAH LLP

*/s/James C. Shah*
James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
19712 MacArthur Blvd., Suite 222
Irvine, California 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts (phv forthcoming)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*